UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM RICHARDSON,

     Petitioner,

v.                                  Case No. 8:05-cv-499-T-23EAJ

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

     Richardson petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for aggravated battery, for which he is serving fifteen years.  Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 10).

## BACKGROUND[1]

     The victim and sole witness, Nancy Shubert, testified that she lives in St. Petersburg with her two teenage sons.  Shubert knew Richardson for eight years and they were engaged.  Richardson, who arrived at Shubert's house at 11:15 p.m. on October 2, 1998, was aggravated because he suspected Shubert of meeting another man for lunch that day.  Richardson lunged at her, grabbed her by the throat, and pushed her onto the couch where he began strangling her while "pinning her down."  Richardson choked Shubert to the point of near unconsciousness.  Richardson stopped choking her when she stopped struggling.  He repeatedly told her that she was going to

---

[1] This summary of the facts derives from Richardson's <u>Anders</u> brief on direct appeal at 2-3 (Respondent's Exhibit 2).

die.  Richardson hit her in the face, head, and throat with both his hand and a beer

bottle.  He dragged her through the house and ultimately into the bedroom where the

strangulation continued.  Sometimes Shubert was unable to scream, at other times she

feared both that screaming would awaken her boys and that her boys would awaken

and encounter the situation.  The attack lasted at least an hour.

After composing himself, Richardson "took her bleeding face in his hands" and

"asked why she made him do this to her."  Before falling asleep, Richardson said, "Well,

I know I fucked up.  I'm going to jail."

At trial, the judge ruled that if defense counsel requested a voluntary intoxication

jury instruction, the state could inform the jury that this assault was not Richardson's

first assault on Shubert.  The state could also reveal that during this latest assault,

Richardson stated, "This is for you calling the police on me, and you're not going to

get — you're not going to get a chance to escape me this time."  Respondent's Exhibit 1

Vol. II at 16-17.  The defense chose to forfeit a voluntary intoxication jury instruction to

avoid the jurors' hearing the above statement.  Also, after consulting with his counsel,

Richardson waived his right to testify.  Respondent's Exhibit 2 Vol. II at 145-46.  The

jury convicted Richardson of aggravated battery as charged.  The judge sentenced

Richardson to the statutory maximum of fifteen years.

Richardson's appointed counsel filed an appellate brief as required by Anders v.

California, 386 U.S. 738 (1967) (Respondent's Exhibit 2).  The appellate court affirmed

both the conviction and the sentence (Respondent's Exhibit 6).  The trial court

summarily denied (Respondent's Exhibit 15) Richardson's Rule 3.850 motion for

post-conviction relief and supplement (Respondent's Exhibit 11 and 12), a decision

affirmed on appeal (Respondent's Exhibit 29).  The respondent admits that

Richardson's federal petition is timely (Response n.3 at 3-4 Doc. 10).  The petition

presents three grounds of ineffective assistance of counsel, which are addressed

seriatim.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210

(11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied--the state-court adjudication resulted in a decision
> that (1) "was contrary to . . . clearly established Federal Law, as
> determined by the Supreme Court of the United States," or (2) "involved

an unreasonable application of . . . clearly established Federal law, as
determined by the Supreme Court of the United States."  Under the
"contrary to" clause, a federal habeas court may grant the writ if the state
court arrives at a conclusion opposite to that reached by this Court on a
question of law or if the state court decides a case differently than this
Court has on a set of materially indistinguishable facts.  Under the
"unreasonable application" clause, a federal habeas court may grant the
writ if the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to the facts of
the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different from

an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d

1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per

se, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 2) Richardson's

convictions and sentences on direct appeal in a per curiam decision without a written

opinion, and likewise affirmed (Respondent's Exhibit 29) the denial of his subsequent

Rule 3.850 motion for post-conviction relief.  The state appellate court's per curiam

affirmances warrant deference under Section 2254(d)(1) because "the summary nature

of a state court's decision does not lessen the deference that it is due."  Wright v.

Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245

(2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Richardson bears the burden of overcoming a state court factual determination

by clear and convincing evidence.  "[A] determination of a factual issue made by a State

court shall be presumed to be correct.  The applicant shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence."  28 U.S.C.

§ 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a

- 4 -

mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.),

cert. denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of

fact in the trial court's rejection of Richardson's post-conviction claims (Order Denying

Motion for Post-Conviction Relief, Respondent's Exhibit 15).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Richardson claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d

1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th

Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In Strickland v. Washington, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part
> test for analyzing ineffective assistance of counsel claims.  According to
> Strickland, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.

Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305

("When applying Strickland, we are free to dispose of ineffectiveness claims on either of

its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Richardson must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Richardson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Richardson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done. We ask

only whether some reasonable lawyer at the trial could have acted, in the
circumstances, as defense counsel acted at trial. . . .  We are not
interested in grading lawyers' performances; we are interested in whether
the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v.

United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v.

Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983)

(counsel has no duty to raise frivolous claims).

Richardson must prove that the state court's decision was "(1) . . . contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States or (2) . . . based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d).

Richardson presented his claims of ineffective assistance of counsel in his Rule

3.850 motion for post-conviction relief.  The state court summarily rejected the claims in

a written order (Respondent's Exhibit 12) in which the court recognized the correct

controlling Supreme Court precedent:

In the instant Motion, Defendant asserts two claims of ineffective
assistance of counsel.  To raise a successful ineffective assistance of
counsel claim, Defendant must show two elements.  First, the defendant
must show that counsel's performance was deficient.  This requires
showing that counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment.  Second, the defendant must show that the deficient
performance prejudiced the defendant.  This requires that the Defendant
show that the outcome at trial would likely be different.  See Strickland v.

- 7 -

Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Because the state court correctly recognized that Strickland governs Richardson's

ineffective assistance of counsel claims, Richardson cannot meet the "contrary to" test

in Section 2254(d)(1). Richardson instead must show that the state court unreasonably

applied Strickland or unreasonably determined the facts.

Grounds One and Two:

In his first two claims of ineffective assistance of counsel, Richardson contends

that counsel failed to present a voluntary intoxication defense and that counsel

misadvised Richardson about testifying.[2]  The state court summarily denied

(Respondent's Exhibit 12) both claims.  Regarding Ground One, the court stated:

> At claim one, Defendant contends that counsel was ineffective for abandoning at trial the defense of voluntary intoxication. Specifically, Defendant claims that counsel should have proceeded with the voluntary intoxication defense despite the Court's ruling that the State would be allowed to present testimony that Defendant previously battered his girlfriend to rebut the inference that Defendant lacked intent.  During pre-trial motions, the State asserted that if the defense sought an instruction on voluntary intoxication, that the State should be permitted to inquire into this prior act since the victim could testify that Defendant had stated "This is for you calling the police on me, and you're not going to get — you're not going to get a chance to escape me this time" during the attack.  Later, the Court ruled that the defense had opened the door to the State entering such evidence when counsel asked the witness about Defendant's drunkenness.  Subsequently, after consultation with counsel, Defendant waived the jury instruction on voluntary intoxication.

---

[2]  Richardson's federal petition alleges that counsel was ineffective for "refusing" to allow Richardson to testify.  Richardson failed to present the state courts with a claim based on counsel's "refusing."  Instead, in state court Richardson alleged that counsel was ineffective for "misadvising" Richardson not to testify.  A claim based on "refusing" is both unexhausted and procedurally barred from federal review.  See Rose v. Lundy, 455 U.S. 509, 518-19 (1982), Duncan v. Henry, 513 U.S. 364, 365 (1995), and O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999).  The respondent admits that Ground Two is exhausted to the extent that the claim is limited to the "misadvising" alleged and rejected in Richardson's Rule 3.850 motion for post-conviction relief.  The review of Ground Two is limited to the claim presented to the state courts.

Further, counsel objected to the ruling and preserved the issue for appe[llate] review.  The defense argued in closing that Defendant did not intend to cause great bodily harm or disfigurement.  Based on the record, the Court cannot conclude that counsel's strategy in waiving the involuntary intoxication defense "falls outside the wide range of reasonable professional assistance." Strickland, at 689.  This claim is denied.

When faced with choosing between (1) requesting a voluntary intoxication jury instruction or (2) precluding use of the above statement and additional evidence of Richardson's prior assaults on Shubert by forfeiting the jury instruction, defense counsel conferred with Richardson and represented that the defense was forfeiting the voluntary intoxication jury instruction.  The state court's decision was not based on an unreasonable determination of the facts because the record supports the state court's finding that Richardson waived the jury instruction on voluntary intoxication (Respondent's Exhibit 1 Vol. II at 124-26).[3]  Regarding Ground Two, the state court stated:

---

[3] The Court:  You go discuss whether you still want to proceed, and I'll get the Williams rule instruction.  And we'll be back in five minutes.  Thank you.

(Thereupon, a recess in the proceedings took place.)

The Court:  Counselor, decisions?

[Defense Counsel]:  Yes, Judge.  We are going to elect not to ask for the instruction for intoxication, and I would ask that by doing so it [m]akes as irrelevant . . . any type of Williams rule act.

The Court:  All right.  I'm also going to sustain any objection in closings and grant an oral Motion in Limine that we not discuss his state of intoxication in closing . . . .  [Y]ou're electing not to give voluntary intox[ication], and you're not going to argue the last opinion you elicited from her in closing argument.  We're only going to argue . . . what does his conduct all mean, right, not mental state?

[Defense Counsel]:  Judge, I understand.

. . . .

[Defense Counsel]:  Certainly I can argue intent in closing or lack of intent, but I can't do so because of intoxication.

The Court:  Correct.  That's what you're electing to do under the circumstance.

(continued...)

- 9 -

Secondly, Defendant contends that his counsel was ineffective in advising Defendant not to testify since he could testify as to the intoxication defense.  As noted above Defendant waived the presentation of such a defense on counsel's advice and later assured the Court that he was freely and voluntarily waiving his right to testify.  As Defendant does not allege any other subject, besides the intoxication defense on which his testimony could be useful, he has failed to show how he was prejudiced or that counsel was ineffective in failing to call him as a witness.  This claim is denied.

The state court's decision was not based on an unreasonable determination of the facts because the record supports the state court's factual finding that Richardson freely waived his right to testify (Respondent's Exhibit 1 Vol. II at 145-46).[4]

---

[3](...continued)
[Defense Counsel]:  And, judge, I just — for the record, of course, ideally I would like to be able to argue it without anything coming in, but I understand your logic and your ruling, and it's because of that I'm choosing not to.

The Court:  And you've also had the opportunity to discuss that with Mr. Richardson?

[Defense Counsel]:  Oh, yeah.

The Court:  That's what you did during the break?

[Defense Counsel]:  Yes.

The Court:  You guys are on the same page as far as that's concerned; is that right?

[Defense Counsel]:  Yeah, with all of the decisions he's been —

The Court:  All right.  Then we're not going to. . . get into the prior incident with the understanding that the voluntary intox[ication] is not going to be proffered as a defense and not argued in closing argument and the jury is not instructed on.

[4]  The Court:  You need some time to discuss with Mr. Richardson his decision on whether to testify or not?

[Defense Counsel]:  I don't believe so, but I would ask for 10 seconds more.

The Court:  All right.  Take a moment.

(Thereupon, a pause in the proceedings took place.)

[Defense Counsel]:  He does not want to testify.

The Court:  All right.  I have to have a brief conversation with Mr. Richardson about that. Thank you, counselor.  Mr. Richardson, you may remain seated.  Do you understand —

(continued...)

- 10 -

To prevail on Grounds One and Two Richardson must show that the state court

unreasonably applied <u>Strickland</u>.  The state court rejected the claim in Ground One

because "counsel's strategy in waiving the involuntary intoxication defense" was not

_____

[4](...continued)
have you had a chance to talk to [defense counsel] about your decision whether to testify or not?

The Defendant:  Yes, Your Honor.

The Court:  Do you understand it's a decision that he can advise you on, but it's absolutely a decision that you have to make yourself?  Do you understand that?

The Defendant:  Yes, I do.

The Court:  He can give you his best advise, but in the end you have to make the decision of whether you're going to testify or not?

The Defendant:  Yes, sir.  I understand.

The Court:  Do you understand you have an absolute right to testify if you wish?

The Defendant:  Yes, I do.

The Court:  Do you also understand the State could cross-examine you, and if there are any, they could ask you about any prior felony convictions that you have?

The Defendant:  Yes, I do.

The Court:  Do you have all of the information you need to make a decision on whether you wish to testify or not?

The Defendant:  Yes.

The Court:  Do you wish to testify?

The Defendant:  No,  I do not, Your Honor.

The Court:  Are you making that decision freely and voluntarily?

The Defendant:  Yes, I am.

The Court:  Is anyone threatening you or coercing you in any way to get you to make that decision?

The Defendant:  No, Your Honor.

The Court:  All right.  The Court will find that Mr. Richardson has had the opportunity to speak to [defense counsel], that he understands the import of his decision, and that he's made the decision not to testify freely and voluntarily.

"outside the wide range of reasonable professional assistance."  The state court rejected the claim in Ground Two because the only stated purpose for Richardson's testifying was to support the intoxication defense, a defense that counsel waived pursuing.

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which defense to present.  "By 'strategy,' we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client."  Chandler v. United States, 218 F.3d at 1314 n.14.  See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.") and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).  Defense counsel had two options, neither of which was the preferred.  If counsel had chosen to preserve the voluntary intoxication defense, then arguably counsel was ineffective for allowing the jury hear very incriminating testimony otherwise excluded.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland v. Washington, 466 U.S. at 689.  The state court's decisions on Grounds One and Two were consistent with Strickland.

Ground Three:

Richardson's final ground is that trial counsel rendered ineffective assistance by conceding guilt in the opening and closing statements, and as a result, counsel failed to challenge the state's case.  The respondent correctly argues that this claim is unexhausted and not reviewable on the merits because Richardson failed to include this claim in his Rule 3.850 motion for post-conviction relief.  A petitioner must present each claim to the state courts before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971).  Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

Accordingly, Richardson's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Richardson and close this action.

ORDERED in Tampa, Florida, on March 18, 2008.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**

- 13 -